IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| | ) | |
| **STEVEN CLARKE** | ) | |
| | ) | |
| **v.** | ) | **Civil No. JFM-12-3267** |
| | ) | |
| **DYNCORP INTERNATIONAL LLC** | ) | |
| | ) | |

## MEMORANDUM

Plaintiff Steven Clarke brings this suit against his former employer, DynCorp

International LLC, under 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000(e) *et seq.*; and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code, State

Gov't Art., § 20-606(a), alleging race discrimination, retaliation, and a retaliatory hostile work

environment. Now pending is DynCorp's motion to dismiss most of the claims in Clarke's

amended complaint. (ECF No. 11.) The issues have been fully briefed, and no hearing is

necessary. *See* Local Rule 105.6. For the following reasons, DynCorp's motion to dismiss is

granted in part and denied in part.

## Background[1]

Clarke, an African-American male, was hired as an Airplane Mechanic III for DynCorp

at Andrews Air Force Base in Maryland in February 2004. (Am. Compl. ¶¶ 12, 17-18, ECF No.

8.) He received an interim security clearance but was required to obtain a full security clearance

to continue employment at DynCorp. (*Id.* ¶ 21, 25; *see id.* ¶ 79.) The Defense Security Service

("DSS") reviews applications for security clearance submitted by DynCorp for its employees.

---

[1] The following facts alleged by Clarke in his amended complaint are accepted as true for the
purpose of DynCorp's motion to dismiss.

(*Id.* ¶ 27.)  A DynCorp officer maintains direct contact with DSS throughout the security

investigation and provides additional information if necessary.  (*Id.* ¶ 18.)

According to the amended complaint, between 2004 and 2006 DynCorp hired a

"substantially higher number of [w]hite aircraft mechanics than [b]lack mechanics;" white

mechanics received "more favorable benefits than [b]lack mechanics;" and supervisors

disciplined black mechanics disproportionately.  (*Id.* ¶¶ 30-31.)  On August 17, 2006, Clarke

filed an EEOC complaint against DynCorp alleging the company discriminated against him on

account of his race when it accused him of sleeping on duty and suspended him without

subjecting white employees to "the same level of discipline."  (*Id.* ¶ 29; 2006 Charge, Mot. to

Dismiss, Ex. 1, ECF No. 11-2.)  The EEOC concluded its investigation of the specific claims in

Clarke's 2006 charge of discrimination and sent him a right-to-sue letter on January 17, 2007.[2]

(Am. Compl. ¶ 38; 2007 Dismissal at 2, Mot. to Dismiss, Ex. 2, ECF No. 11-3.)

Clarke met with DynCorp maintenance supervisor, Louis Dickerson, in November 2007

to complain of "discriminatory punishment."  (Am. Compl. ¶¶ 41-46.)  Before that meeting,

Clarke was "instructed to write up a statement regarding his interactions with 'William,'" a

DynCorp Aircraft Mechanic III, which he believed was an effort by DynCorp management to

discriminate and retaliate against him for his 2006 EEOC charge of discrimination.  (*Id.* ¶¶ 44-

45.)  Dickerson took no action in response to Clarke's complaint.  (*Id.* ¶ 47.)

---

[2] Clarke alleges that the EEOC investigation continued through November 2007 and that "the 90 day filing period between when [he] received the Right to Sue and when his Right to Sue expired ran until February 2008."  (Am. Compl. ¶¶ 36, 39.)  The right-to-sue letter sent by the EEOC on January 19, 2007 in response to Clarke's 2006 charge, however, only allowed him to file suit until approximately April 19, 2007.  (2007 Dismissal at 2.)  The EEOC right-to-sue letter submitted by DynCorp overrides the presumption that Clarke's allegations are true for the purpose of considering the motion to dismiss. *See Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to [Federal Rule of Civil Procedure] 10(c), the exhibit prevails.").

Clarke claims DynCorp purposefully delayed converting his interim security clearance into a full-time security clearance while it "was able to push through security clearances of white mechanics and non-complaining mechanics, with no previous history of EEOC complaints or participation in the EEOC process" during the same time frame from 2006 to 2010. (*Id.* ¶¶ 53, 55.) He claims DynCorp did not provide him assistance with the security clearance process when it routinely provided such assistance to other, non-complaining mechanics and that a fellow mechanic, Mark Waddell, witnessed this "disparate treatment." (*Id.* ¶¶ 58-59.) Sometime in 2007, an unnamed DynCorp Aircraft Mechanic III told Clarke that he believed DynCorp was trying to negatively impact Clarke's security clearance. (*Id.* ¶ 59.) Clarke received a questionnaire packet from DSS about his security clearance in April 2009, but no one at DynCorp corresponded with him about the security clearance from 2009 to 2010. (*Id.* ¶¶ 60-61.) Clarke makes mixed allegations both that he learned that his interim security clearance had been "pulled" in November 2008 and that he did not learn that it had been pulled until he was discharged from DynCorp in 2010.[3] (*Id.* ¶¶ 56, 57.)

Clarke learned in 2008 after his right-to-sue period had expired that someone in DynCorp's human resources department "had revealed to [Clarke's] coworkers (Arthur Hubbard, Car Starker, Louis Dickerson) that [he] had 'bounced checks' [and] was 'arrested for spousal abuse'" even though Clarke had been cleared of spousal abuse charges associated with the arrest

---

[3] Courts faced with inconsistent facts alleged in the complaint have treated the inconsistencies differently. Some have found the complaint fails to meet the well-pled standard of Federal Rule of Civil Procedure 8 and have granted a motion to dismiss with leave to amend the complaint. *See, e.g.*, *Southern Volkswagen, Inc. v. Centrix Financial, LLC*, 357 F. Supp. 2d 837, 841 (D. Md. 2005). Others have found that the inconsistent allegations create an issue of fact to be viewed in the light most favorable to the plaintiff and denied the motion to dismiss so the factual dispute could be resolved at later proceedings. *See, e.g.*, *Wenzlaff v. NationsBank*, 940 F. Supp. 889, 892 (D. Md. 1996). In this case, the court considers the facts in the light most favorable to Clarke and accepts that he did not learn of his failed security clearance until his discharge in 2010 so that the allegation states a fact occurring in the time period considered by this court.

and had a "valid explanation regarding the bounced check." (*Id.* ¶¶ 49-51.) From 2008 to 2010, DynCorp's lead supervisor on the second shift, Arthur Hubbard, a white male, referred to Clarke as "a fat ass" and "black fat ass." (*Id.* ¶ 62.) Hubbard made reference to Clarke's EEOC activity on at least three occasions, the last of which being October 2009, saying, "Your complaints are going to get you nowhere," and "Your complaints are going to get you fired." (*Id.* ¶¶ 63-64.)

On April 26, 2010, Clarke filed a second EEOC charge alleging race discrimination from other black male DynCorp employees and discriminatory retaliation in the form of the investigation into his security clearance. (*Id.* ¶¶ 65, 76; 2010 Charge at 2, Am. Compl. Ex. 1, ECF No. 8-1.) The EEOC sent a notice that Clarke had filed his 2010 charge of discrimination to DynCorp on June 8, 2010. (2010 Notice, Mot. to Dismiss, Ex. 3, ECF No. 11-4.) In "approximately June 2010," Clarke overheard lead supervisor, Car Starker, telling other employees that "this what [sic] they . . . do to you when they don't like you" in reference to Clarke's discharge from DynCorp.[4] (*Id.* ¶¶ 70-72.)

On August 31, 2010, DynCorp discharged Clarke citing his failure to obtain a security clearance as the reason for his discharge. (*Id.* ¶¶ 79; 2011 Am. Charge, Am. Compl., Ex. 2, ECF No. 8-2.) Clarke claims, however, that DynCorp has allowed similarly situated, white, non-complaining employees, such as Patrick Hoye and Andrew Hicks, to remain employed or be reinstated after a change in status of security clearance. (*Id.* ¶¶ 81-82.)

On April 20, 2011, Clarke amended his 2010 EEOC charge to include his discharge for "security concerns" by completing a form for the Prince Georges County Human Relations

---

[4] The court relies on the facts alleged in the amended complaint despite apparent temporal inconsistencies with respect to the events Clarke alleges as here where an employee allegedly referred to Clarke's August 2010 discharge two months before it occurred.

Commission.[5]  (Am. Compl. ¶ 69; 2011 Am. Charge, Am. Compl., Ex. 2, ECF No. 8-2.)  Both

Clarke's 2010 charge of discrimination and his 2011 amendment state that the time period during

which Clarke suffered harassment began on January 1, 2010.  (2010 Charge; 2011 Am. Charge.)

The EEOC issued Clarke a right-to-sue letter on August 9, 2012.  (Am. Compl. ¶ 91; 2012

Dismissal at 1-2, Original Compl., Ex. 1, ECF No. 1-1.)

Clarke filed this suit on November 7, 2012.  (Original Compl., ECF No. 1.)  On February

19, 2013, DynCorp filed a motion to partially dismiss Clarke's original complaint.  (ECF No. 5.)

On March 12, 2013, Clarke amended his complaint (ECF No. 8), and the court denied

DynCorp's first motion to dismiss as moot on March 14, 2013 (ECF No. 10).  The amended

complaint asserts three counts against DynCorp in violation of Title VII, Section 1981, and the

FEPA: race discrimination (Count 1), retaliation (Count 2), and a retaliatory hostile work

environment (Count 3).  (ECF no. 8.)  On March 26, 2013, DynCorp filed the pending motion to

dismiss most of the claims in Clarke's amended complaint.  (ECF No. 11.)

**Analysis**

**I. Rule 12(b)(1) Jurisdiction for Title VII and FEPA Claims**

DynCorp filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

but argues that Clarke failed to exhaust his administrative remedies with respect to certain

claims.  "Motions to dismiss for failure to exhaust administrative remedies are governed by

[Federal Rule of Civil Procedure] 12(b)(1) for lack of subject matter jurisdiction."  *Khoury v.*

*Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003).  Accordingly, DynCorp's motion will be

treated as a motion to dismiss for lack of subject matter jurisdiction for the purpose of this

---

[5] Because DynCorp does not dispute the validity of Clarke's amended charge, the court considers
the updated charge of discrimination in April 2011 a valid amendment to his 2010 charge of
discrimination.

argument.  *See* Fed. R. Civ. P. 12(b)(1); *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) ("[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim."); *Maryland Comm'n on Human Relations v. Downey Commc'ns, Inc.*, 678 A.2d 55, 72 (Md. App. 1996) (requiring same for Maryland FEPA claim).  *But see Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326, 334 (4th Cir. 1983) (stating exhaustion of EEOC remedies not required for Section 1981 claims).

A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal quotation marks and citation omitted).  The plaintiff bears the burden of proving that subject matter jurisdiction exists.  *Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008).  When considering a Rule 12(b)(1) motion, the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Evans,* 166 F.3d at 647 (internal quotation marks and citation omitted).  Specifically, the court may take judicial notice of the existence and contents of EEOC proceedings if necessary to decide issues like exhaustion of administrative remedies, *see, e.g.*, *Bonds v. Leavitt*, 629 F.3d 369, 378-80 (4th Cir. 2011) (discussing contents of plaintiff's EEOC charges), but it may not take judicial notice of the *truth* of matters outside the challenged pleading, *see E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 449-50 (4th Cir. 2011).

It is well-established that "[b]efore filing suit under Title VII, a plaintiff must exhaust [his] administrative remedies by bringing a charge with the EEOC."  *Smith v. First Union Nat'l*

*Bank*, 202 F.3d 234, 247 (4th Cir. 2000). The scope of the civil action stemming from the EEOC

charge is confined to "those discrimination claims stated in the initial charge, those reasonably

related to the original complaint, and those developed by reasonable investigation [of that

complaint]." *Jones*, 551 F.3d at 300 (quotations omitted). Civil suits may not present entirely

new factual bases or entirely new theories of liability not found in the initial EEOC complaint.

Therefore, a plaintiff fails to exhaust his claims when "his administrative charges reference

different time frames, actors, and discriminatory conduct than the central factual allegations in

his formal suit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005).

Because Clarke failed to file a civil suit during the 90-day period indicated in the right-to-

sue letter issued in response to his 2006 charge of discrimination, he cannot now make claims

based on the allegations in that charge. *See* 42 U.S.C. § 2000e-5(f)(1) (requiring civil suit

brought by complainant be filed within 90 days of notice EEOC will not file action). Clarke

filed this suit during the appropriate period after receipt of the right-to-sue letter issued on

August 9, 2012 in response to his 2010 charge of discrimination and 2011 amendment. Thus,

Clarke's claims are limited only to the valid claims made in his amended 2010 charge and others

reasonably expected to be included in an administrative investigation of those claims.

Accordingly, the court may only consider Clarke's Title VII and FEPA claims as supported by

acts alleged to have occurred after January 1, 2010, as stated in the 2010 charge, and reasonably

related to race discrimination, a retaliatory investigation into his security clearance, and

retaliatory discharge.[6]

---

[6] DynCorp's alleged leaks of confidential information about Clarke's security clearance and
personal history, cited in the 2010 charge, occurred in late 2007 and early 2008 (Am. Compl.
¶¶ 48, 75), more than 300 days before Clarke filed the 2010 charge. Those allegations are,
therefore, invalid as a basis for claims of discrimination and a hostile work environment in the

**II. 12(b)(6) Motion to Dismiss**

The remainder of DynCorp's motion is properly analyzed under Federal Rule of Civil

Procedure 12(b)(6). "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and

not to resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal

quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231,

243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled

allegations of the complaint as true" and "construe the facts and reasonable inferences derived

therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474

(4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially

aimed at assuring that the defendant be given adequate notice of the nature of a claim being

made against him, they also provide criteria for defining issues for trial and for early disposition

of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to

raise a right to relief above the speculative level, . . . on the assumption that all the allegations in

the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555,

(2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth

sufficiently the "grounds of his entitlement to relief," offering "more than labels and

conclusions." *Id.* (internal quotation marks and alterations omitted). It is not sufficient that the

well-pled facts create "the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662

(2009). Rather, to withstand a motion to dismiss, "a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face," meaning the court

---

current civil suit. *See* 42 U.S.C. § 2000e-5(e)(1) (requiring charge be filed within 300 days of
alleged unlawful employment practice).

could draw "the reasonable inference that the defendant is liable for the conduct alleged." *Id.* at

1949 (internal quotations and citation omitted).

The court may consider documents attached to the complaint, as well as documents

attached to the motion to dismiss if they are integral to the complaint and their authenticity is not

disputed. *Philips*, 572 F.3d at 180; *CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150,

154 (4th Cir. 2009); *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). While the

court presumes facts alleged by the plaintiff are true, in a "conflict between the bare allegations

of the complaint and any exhibit attached . . . , the exhibit prevails." *Fayetteville Investors v.*

*Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). The court relies, therefore, on

the documents submitted by both Clarke and DynCorp related to the EEOC proceedings.

Although a plaintiff is not required to plead a *prima facie* case of discrimination in order

to survive a Rule 12(b)(6) motion to dismiss, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515

(2002), he must plead facts sufficient to state each element of the asserted claim, *Bass v. E.I.*

*Dupont De Nemours & Co.*, 324 F.3d 761, 764-5 (4th Cir. 2003). The *McDonnell Douglas*

burden shifting analysis applies to race discrimination, retaliation, and hostile work environment

claims under both Title VII and Section 1981. *See James v. Booz-Allen & Hamilton, Inc.*, 368

F.3d 371, 375 n.1 (4th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973)); *Wang v. Metro. Life Ins. Co.*, 334 F.Supp.2d 853, 869 (D. Md. 2004). Because the

Maryland FEPA is the state law counterpart to Title VII, courts also apply the same analysis to

claims under that statute. *See Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 743 n.8 (Md.

2007).

While the analysis of subject matter jurisdiction above limited the time period during

which Clarke may base his claims under Title VII and the FEPA, Section 1981 has no

requirement to exhaust administrative claims and Clarke's claims under that statute are limited

only by its limitations statute. *See Lilly*, 720 F.2d at 334 (stating exhaustion of EEOC remedies

not required for Section 1981 claims). The statute of limitations for employment discrimination

claims under 42 U.S.C. § 1981 is four years. *Jones v. R.R. Donnelley & Sons*, 541 U.S. 369,

383-84 (2004); *see* 28 U.S.C. § 1658 (establishing four-year limitations period for certain federal

claims). *But see Derrickson v. Circuit City Stores, Inc.*, 84 F. Supp. 2d 679, 687 (D. Md. 2000)

(holding three-year state statute of limitations for civil actions applies to § 1981 suits). Because

Clarke filed his original complaint in this case on November 7, 2012, his Section 1981 claims

may not depend on any alleged discriminatory acts that occurred before November 7, 2008.

### A. Race Discrimination (Count 1)

In Count 1, Clarke claims he suffered disparate treatment at DynCorp on account of his

race. Under the *McDonnell Douglas* framework, to plead a case of disparate treatment sufficient

to withstand a Rule 12(b)(6) motion, Clarke must show: (1) he is a member of a protected class;

(2) he had satisfactory job performance; (3) he was subjected to adverse employment action; and

(4) similarly situated employees outside his class received more favorable treatment. *Prince-

Garrison v. Maryland Dep't of Health & Mental Hygiene*, 317 Fed. App'x 351, 353 (4th Cir.

2009) (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007), cert. denied, 552

U.S. 1102 (2008)).

As an African American, Clarke is a member of a protected class. He alleges that white,

non-complaining employees received security clearances at DynCorp more quickly than African

American employees and that white, non-complaining employees with similar clearance lapses

remained employed or were reinstated. (Am. Compl. ¶¶ 81-89.) He further alleges that

DynCorp impeded his own acquisition of the required security clearance and ultimately

discharged him for failing to obtain it. (*Id.* ¶¶ 74, 78.) Clarke's pleading is facially plausible and provides sufficient factual information to place DynCorp on notice of his disparate treatment claim. Therefore, DynCorp's motion to dismiss will be denied with respect to the issue of disparate treatment.

### B. Retaliation (Count 2)

To establish a *prima facie* case of retaliation, Clarke must show that: (1) he engaged in a protected activity, (2) his employer acted adversely against him, and (3) the protected activity was causally connected to the adverse action. 42 U.S.C. § 2000e-3; *see Holland*, 487 F.3d at 218 (Title VII); *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 343-44 (4th Cir. 2006) (Section 1981). It is undisputed that Clarke's charges of discrimination with the EEOC constitute protected activity, and discharge from employment is an adverse action. The parties dispute whether Clarke can show a causal connection between his protected activity and his discharge.

Temporal proximity between an employer's knowledge of an employee's protected activity and an adverse action against that employee must be "very close" to show a retaliatory motive. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The Fourth Circuit has found that a lapse of as little as two months between the protected activity and an adverse employment action is "sufficiently long so as to weaken significantly the inference of causation." *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003). In fact, the Fourth Circuit found that a three-year lapse between the time when the employer became aware of the protected activity and an adverse employment action was a "lengthy time lapse" that "negates any inference that a causal connection exists between the two." *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998).

Clarke asserts that his 2010 discharge was an adverse action in retaliation for his 2006 EEOC charge. (Am. Compl. ¶ 29, 106; 2010 Charge at 1.) DynCorp became aware that Clarke filed the 2006 charge at the latest by the time it received a copy of the dismissal and notice of rights issued to Clarke by the EEOC on January 19, 2007. (*See* 2007 Dismissal at 2.) DynCorp discharged Clarke nearly four years after learning he had filed a charge of discrimination against it in 2006. As a result, Clarke fails to show a causal relationship between the 2006 charge and the 2010 discharge.

There may, however, be a causal connection between Clarke's August 2010 discharge and his second charge of discrimination filed on April 26, 2010. (*See* 2010 Charge at 2.) DynCorp received a notice of Clarke's charge of discrimination issued by the EEOC on June 8, 2010. (2010 Notice, Mot. to Dismiss, Ex.3, ECF No. 11-4.) Although the two-month period between DynCorp's notice and Clarke's discharge "weaken[s] significantly the inference of causation," *see King*, 328 F.3d at 151 n.5, and DynCorp alleges its nondiscriminatory reason for discharging Clarke is his lack of security clearance, additional discovery may allow Clarke to prove facts showing that his discharge was in retaliation for the second EEOC charge. Therefore, Clarke's claim under Title VII, the FEPA, and Section 1981 of retaliation for his 2010 charge survives DynCorp's motion to dismiss.

Accordingly, DynCorp's motion to dismiss is granted as to the claim that his discharge was in retaliation for the 2006 charge of discrimination and denied as to the claim that his discharge was in retaliation for the 2010 charge of discrimination.

## C. Retaliatory Hostile Work Environment (Count 3)

Clarke claims DynCorp retaliated against him by creating a hostile work environment. Some courts consider a hybrid hostile work environment claim as part of an accompanying

retaliation claim. *See, e.g.*, *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 600 (D. Md. 2011) (interpreting *Burlington N. & Santa Fe Ry. V. White*, 538 U.S. 53, 67-68 (2006) and *Von Guten v. Maryland*, 243 F. 3d 858, 869 (4th Cir. 2001)) (internal quotations omitted). To show that a hostile work environment satisfies the "adverse employment action" prong of the *prima facie* case for retaliation, Clarke must how that the environment "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 600.

Other district courts have analyzed retaliatory hostile work environment claims under a hybrid framework including the *prima facie* elements of the hostile work environment along with the adverse action and causal connection elements of a retaliation claim. *See, e.g.*, *Haines v. Donahoe*, Civ. No. 10-293, 2012 WL 3595965, at *11 (D. Md. Aug. 20, 2012). "In order to establish a hostile work environment claim, a claimant must demonstrate that the alleged conduct: 1) was unwelcome; 2) resulted because of . . . gender, disability, or prior protected activity; 3) was 'sufficiently severe or pervasive' to alter the conditions of [his] employment; and 4) was imputable to [his] employer." *Id.* (quoting *Pueschel v. Peters*, 577 F.3d 558, 564-65 (4th Cir. 2009). A hostile work environment is "permeated with discriminatory intimidation, ridicule, and insult" not caused by the "mere utterance of an . . . epithet which engenders offensive feelings in an employee." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). Because the Title VII and FEPA retaliation claims are limited to acts occurring after Clarke filed his second charge of discrimination on April 26, 2010, Clarke must allege facts showing a hostile work environment existed after that date and after November 7, 2008 for his claim under Section 1981.

Clarke fails to state a claim under either standard because he fails to allege facts establishing an adverse employment action that would "dissuade a reasonable worker" from

13

pursuing a charge of discrimination or an abusive atmosphere that is "sufficiently severe or pervasive" to render a work environment hostile.  Clarke alleges that DynCorp supervisor, Arthur Hubbard, referred to him as a "fat ass" and a "black fat ass" from 2008 to 2010 and supervisor, Car Starker, said, "this what [sic] they . . . do to you when they don't like you" in "approximately June 2010."  (Am. Compl. ¶¶ 62, 70-72.)  Such comments, while unwelcome and offensive, fail to satisfy the "severe or pervasive" standard required to show a hostile work environment.  Clarke does not allege that employees who made these comments had any ability to bring about or prevent his discharge, and the comments themselves do not represent an adverse employment action.

Although Clarke alleges other abusive incidents occurred within the four-year limitations period for Section 1981, including his November 2007 meeting with Dickerson (*id*. ¶¶ 41-46), the instruction to write a statement about his interaction with another employee (*id.* ¶¶ 44-45), leaked information from his personnel file (*id.* ¶¶ 49-51), and Hubbard's comments on at least three occasions leading up to October 2009 that Clarke's complaints would get him fired (*id.* ¶ 64), none of them represents an adverse employment action or creates a sufficiently abusive atmosphere to reach the threshold of a hostile work environment.  Accordingly, Clarke's claim for retaliation in the form of a hostile work environment in Count 3 is dismissed.

**Conclusion**

For the foregoing reasons, DynCorp's motion to partially dismiss Clarke's amended complaint is denied as to Count 1 and granted as to Count 3.  As for Count 2, the motion is granted as to DynCorp's alleged retaliation for Clarke's 2006 charge of discrimination and denied as to retaliation for the 2010 charge.  The motion to dismiss does not address Clarke's claim that DynCorp discharged him in 2010 because of his race in violation of Title VII, Section

1981, and the Maryland FEPA (Mot. to Dismiss at 3). Accordingly, Count 1 remains in its

entirety along with the claim of retaliation for Clarke's 2010 charge of discrimination in Count 2.

A separate order follows.


August 20, 2013                              /s/
Date                                         J. Frederick Motz
                                             United States District Judge