IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| STEVEN CLARKE, | * | |
| v. | * | Civil No. JFM-12-03267 |
| DYNCORP INTERNATIONAL, LLC | * | |

\*\*\*\*\*\*

**MEMORANDUM**

Plaintiff Steven Clarke brings this lawsuit against his former employer, DynCorp International, LLC, under 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*; and the Maryland Fair Employment Practices Act ("FEPA"), Md. Code, State Gov't Art., § 20-606(a), alleging race discrimination and retaliation. The court granted DynCorp's motion to dismiss in part and denied it in part on August 20, 2013 (ECF No. 19), permitting only Clarke's disparate treatment claim (Count I) and DynCorp's alleged retaliatory discharge of him in response to filing EEOC charges in 2010 (part of Count II) to move forward. (*Id.*). Now pending is DynCorp's motion for summary judgment on Clarke's remaining Counts (ECF No. 44), and Clarke's cross-motion for partial summary judgment. (ECF No. 55)[1].

No oral argument is necessary. *See* Local Rule 105.6. For the reasons set forth below, the court grants DynCorp's motion for summary judgment, and denies Clarke's cross-motion for partial summary judgment.

---

[1] Clarke filed a motion to correct his memorandum in support of his motion for partial summary judgment on August 22, 2014. (ECF No. 60). Even if the court considers Clarke's amended argument in support of his motion for partial summary judgment, there are no genuine disputes as to any material facts, and DynCorp remains entitled to judgment as a matter of law.

**BACKGROUND**

Clarke is a former employee of DynCorp, a provider of technology and services to various clients including the United States. Relevant to this lawsuit, the United States contracts with DynCorp to service and maintain the United States Presidential Fleet at Andrews Air Force Base in Maryland. (DI's Answer to Plaintiff's First Set of Interrogatories, No. 13, ECF No. 44-2). Due to obvious national security concerns, the United States requires DynCorp to comply with various security measures, including the condition that all DynCorp employees working on the Presidential Fleet "obtain and maintain a secret security clearance." (DynCorp employment offer letter to Clarke, ECF No. 44-4).

DynCorp hired Clarke as an "at will" Aircraft Mechanic on April 2, 2004 to work on its United States Presidential Fleet contract at Andrews Air Force Base. DynCorp clearly stated in the job description and Clarke's offer letter that his obtaining and maintaining a secret security clearance was a necessary condition of continued employment with DynCorp. (*Id.*). Clarke acknowledged that condition when he was hired. (Plaintiff Dep. pp. 40–41, ECF No. 44-3).

The Defense Security Service ("DSS"), a United States Department of Defense agency, administered the relevant security clearance process for Clarke during his DynCorp employment. DSS provided Clarke with a customary interim security clearance soon after he began working at DynCorp in April 2004, which was to last pending a more thorough background investigation culminating in a final adjudication.

DynCorp serves as an intermediary between DSS and DynCorp's employees by delivering any sealed DSS packages to the employee who then mails back the requested

information to DSS directly.² DynCorp only becomes more closely involved if DSS informs it that DSS has revoked or denied a DynCorp employee's security clearance. Although DSS informed DynCorp in "mid-2009" that it had withdrawn Clarke's interim security clearance, DynCorp retained Clarke as an employee pending DSS's final adjudication on his security clearance. (DynCorp's Answer to Plaintiff's First Set of Interrogatories, No. 12, ECF No. 44-2). The Defense Office of Hearings and Appeals (DOHA) informed DynCorp on July 21, 2010 that Clarke was ineligible for a security clearance, and DynCorp informed Clarke of DOHA's decision on July 23, 2010. (ECF No. 44-14).³

Citing Clarke's failure to maintain a security clearance, DynCorp terminated his employment effective August 31, 2010. (ECF No. 8-2). Clarke, who had filed EEOC charges beginning in 2006 that alleged racial discrimination, retaliation and a hostile work environment, amended his July 26, 2010 EEOC charge to include the allegation that DynCorp discharged him in retaliation for his protected EEOC activity. (ECF Nos. 44-21; 11-6). Clarke received a right-to-sue letter from the EEOC on August 9, 2012 and filed this lawsuit on November 7, 2012.

### A. DynCorp's Previous Motion to Dismiss.

DynCorp filed a motion to dismiss Clarke's claims on March 26, 2013 (ECF No. 11), which the court granted in part and denied in part on August 20, 2013. (ECF No. 19).⁴ The court dismissed Clarke's retaliatory hostile work environment claim (Count III) because the

---

² DynCorp followed this procedure with Clarke from 2007–2009 and distributed several sealed DSS packets to him. (ECF Nos. 8–13).
³ Several documents detailing DSS's, the Administrative Law Judge's, and DOHA's justifications for deeming Clarke ineligible for a security clearance are filed under seal (ECF Nos. 18–20); their content is not relevant to the disposition of either summary judgment motion now before the court, as will be discussed further below.
⁴ The facts pertaining to Clarke's specific allegations of racial harassment, retaliation and retaliatory hostile work environment are fully detailed in the court's memorandum accompanying the order. (ECF No. 18).

allegations did not constitute a legally sufficient abusive atmosphere. The court also dismissed part of Clarke's retaliation claim (Count II), because his 2006 EEOC charge was too remote from his discharge in August 2010 to satisfy the required causality element of a *prima facie* retaliation case.

The court denied DynCorp's motion to dismiss as to Clarke's claim of disparate treatment in Count I and Clarke's remaining allegations in Count II, that DynCorp discharged him in August 2010 in retaliation for his filing of EEOC charges in June and July 2010. The case then proceeded to discovery.

**B. Current Cross-motions for Summary Judgment.**

DynCorp filed for summary judgment on April 21, 2014 (ECF No. 44), arguing that there were no disputed material facts and that it was entitled to judgment as a matter of law. Clarke filed a response in opposition on July 25, 2014 (ECF No. 54), and DynCorp filed its reply on August 12, 2014. (ECF No. 59).[5]

Clarke filed for partial summary judgment on July 25, 2014 (ECF No. 55), arguing that DynCorp fostered a hostile work environment in retaliation for Clarke's EEOC activities and that DynCorp failed to comply with various statutory requirements that do not appear relevant to

---

[5] The court notes that Clarke's one-page response in opposition to DynCorp's motion for summary judgment (ECF No. 54) refers to "the following Brief with attachments." There is no accompanying brief, however. The court reviews Clarke's briefs and legal arguments with the knowledge that he is *pro se*, while also recognizing that Clarke must nonetheless comply with the Federal Rules of Civil Procedure. *See generally Symeonidis v. Paxton Capital Grp., Inc.*, 220 F. Supp. 2d 478, 480 n.4 (D. Md. 2002) (explaining that courts will liberally construe *pro se* pleadings and memoranda, but plaintiffs must still "set forth facts sufficient to withstand summary judgment").

Clarke's remaining Counts in his amended complaint.[6] DynCorp filed a response in opposition on August 11, 2014. (ECF No. 56).[7]

## STANDARD

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute about a material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When reviewing a motion for summary judgment, the court must look at the facts and inferences drawn from there in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Although the moving party bears the burden to demonstrate the absence of any genuine issue of material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), the non-moving party may not merely rest upon allegations or denials in pleadings, but must, by affidavit or other evidentiary showing, set out specific facts showing a genuine issue remains for trial. Fed. R. 5 Civ. P. 56(c)(1)(A). A court should enter summary judgment where a non-moving party fails to make a sufficient showing to establish the elements essential to the party's claim and on which the party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

If there is insufficient evidence for a reasonable jury to render a verdict in favor of the non-moving party, there is no genuine issue of material fact, and summary judgment may be

---

[6] Among that statutes that Clarke's memorandum references include the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301 *et seq*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. It is unclear how these statutes relate to Clarke's amended complaint alleging racial discrimination and retaliation.

[7] Clarke's reply to DynCorp's response in opposition to his motion for partial summary judgment is not due until August 28, 2014, however I am content to rule on the pending motions now.

granted. *See Anderson*, 477 U.S. at 248. The court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003). Conversely, the motion should be denied if factual issues exist "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## ANALYSIS

DynCorp's motion for summary judgment is discussed first before then addressing Clarke's cross-motion for partial summary judgment.

### I. DynCorp's Motion for Summary Judgment.

DynCorp moves for summary judgment on Clarke's remaining claims: disparate treatment (Count I) and retaliatory discharge (Count II).

### A. Disparate Treatment Claim.

#### 1. *McDonnell Douglas* and the national security exception.

Under well-settled law, courts evaluate disparate treatment claims through the *McDonnell-Douglas* framework.[8] *E.g.*, *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc), *cert. denied*, 543 U.S. 1132 (2005). A plaintiff bears the initial burden of establishing a *prima facie* case by a preponderance of the evidence. Here, Clarke, an African-American, asserts that DynCorp treated him differently than his white colleagues regarding the security clearance process by giving them "special preferences" and

---

[8] Clarke asserts that DynCorp violated Title VII, § 1981 and FEPA. Although FEPA is a state-law claim, courts also analyze it under the *McDonnell Douglas* framework. *Wise v. Gallagher Basset Servs., Inc.*, 228 F. Supp. 2d 671, 674 (D. Md. 2002). This section's analysis, therefore, applies to FEPA in addition to the federal claims.

"preferential treatment." (Am. Compl. ¶¶ 74, 78, 81–89, ECF No. 8).[9] Were Clarke's allegations to constitute a sufficient *prima facie* case of disparate treatment, the burden would then shift to DynCorp to offer a "legitimate, nondiscriminatory reason for the adverse employment action." *Hill*, 354 F.3d at 285.

Courts lack subject matter jurisdiction over a plaintiff's discrimination claims, however, if the allegations of discrimination involve the process of obtaining, maintaining, or revoking a security clearance necessary for his employment. *See generally Hegab v. Long*, 716 F.3d 790, 794 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 785 (2013) (holding as "well established in our circuit" that "federal courts are generally without subject-matter jurisdiction to review an agency's security clearance decision"). This rule follows from the inherent separation of powers and political question concerns regarding Executive branch decisions on security clearances. *Dept. of the Navy v. Egan*, 484 U.S. 518, 530 (1988). Absent a clear expression by Congress to the contrary, courts should not "intrude upon the authority of the Executive in military and national security affairs." *Id.*

The Fourth Circuit applied the *Egan* rule to Title VII claims, holding that Congress did not provide for judicial scrutiny of security clearance decisions in the statute. *Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996), *cert. denied*, 519 U.S. 1151 (1997); 42 U.S.C. § 2000e-2(g). Accordingly, courts lack subject matter jurisdiction to review revocations of security clearances, including the "instigation of the investigation into the security clearance as a form of retaliation." *Becerra*, 94 F.3d at 149. If an adverse employment decision relates to a security clearance decision and employment was conditioned upon maintaining a security clearance, courts must

---

[9] Clarke also asserts that various racially-based comments were made in his presence and/or directed at him. (Am. Comp. ¶ 62, ECF No. 8). The court deemed those comments insufficient for a hostile work environment claim (ECF No. 18), and the only adverse employment actions that Clarke alleges all relate to DynCorp's actions involving Clarke losing his security clearance.

dismiss the claim for lack of subject-matter jurisdiction and thus avoid the *McDonnell Douglas* framework entirely. *Id.*[10] This must be, because the defendant's likely proffered nondiscriminatory rationale would be the Executive branch's decision not to issue a security clearance. Without jurisdiction to review that decision, a court has nothing left to analyze under *McDonnell Douglas*. *See, e.g.*, *Ryan v. Reno*, 168 F.3d 520, 524 (D.C. Cir. 1999) (noting that plaintiffs are unable to "challenge the proffered reason's authenticity without also challenging its validity," which courts may not do).

### 2. Clarke's allegations all involve his national security clearance.

Here, Clarke alleges that DynCorp treated him differently on the basis of his race regarding the process surrounding his security clearance, chiefly that DynCorp discharged him because of his race and had not protected and advocated for him with DSS as it did with his white colleagues. If DynCorp discharged Clarke because he was ineligible for a security clearance, however, this court lacks subject-matter jurisdiction over Clarke's claim because the court cannot review security clearance decisions.

First, it is undisputed that Clarke's employment as an Aircraft Mechanic required obtaining and maintaining a security clearance. (Offer Letter, ECF No. 44-5; Plaintiff Dep. pp. 41–42, ECF No. 44-3; Job Description, ECF No. 44-6). Moreover, it is undisputed that DynCorp consistently discharged employees who did not obtain, or subsequently lost, their security clearances from 2003 through December 2014. (ECF No. 44-16). These discharged employees ranged in ethnicity and race, from African-American to Caucasian and Asian. (*Id.*). DynCorp reacted the same way by discharging Clarke in August 2010 upon learning that DOHA

---

[10] *See also Muir v. Applied Integrated Tech., Inc.*, No. Civ. 13-0808, 2013 WL 6200178, at **7–8 (D. Md. Nov. 26, 2013) ("The national security exception is well-established and when it is triggered, the disposition of a case is simple: dismissal for lack of subject-matter jurisdiction.").

determined he was ineligible to receive a security clearance. (ECF No. 44-24). Indeed, DynCorp permitted Clarke to continue his employment after DSS withdrew his interim security clearance in mid-2009, pending final adjudication (which was the basis of the July 21, 2010 letter).

Second, Clarke also claims that DynCorp failed to assist him in obtaining and maintaining a security clearance because of his race. Even if these allegations are outside the scope of the security clearance exception and, therefore, reviewable by this court, Clarke's deposition testimony undercuts his own allegations. (ECF No. 44-3). For example, Clarke states that DynCorp should have "helped [him] out more" in filling out DSS's requests (the sealed packets that DynCorp delivered to Clarke from 2007–2009), but states that he "can't tell [the court] how" DynCorp should have helped him. (*Id.*, p. 156: 20–22). When asked specifically about how DynCorp allegedly helped a white colleague with his security clearance process in a way that it did not help Clarke, he replied "I do not know." (*Id.*, pp. 178: 10, 13; 179: 11, 17).

Taken together, the undisputed facts show DynCorp discharged Clarke after learning that he was ineligible for a security clearance, and that Clarke is unwilling or unable to articulate how DynCorp treated its employees' security clearance processes differently based on their race. Accordingly, DynCorp's motion for summary judgment on Clarke's disparate treatment claim is granted for lack of subject-matter jurisdiction.

### B. Retaliation Claim.

DynCorp also moves for summary judgment on Clarke's remaining retaliation claim, in which he contends that DynCorp discharged him in retaliation for filing EEOC charges in

2010.[11] DynCorp argues in response that it was unaware of Clarke's EEOC charges until after it terminated his employment.

Clarke filed an unperfected EEOC charge on June 2, 2010 and a perfected EEOC charge on July 26, 2010. (ECF Nos. 44-20, 44-21). He asserts that DynCorp was aware of his activity, and discharged him because of it. (Am. Complaint ¶¶ 104–106, ECF No. 8). It is undisputed, however, that DynCorp did not receive notice of the charges until September 15, 2010 and September 8, 2010, respectively. (ECF Nos. 44-20, 44-21). Because DynCorp discharged Clarke on August 31, 2010, there is no evidence proving the required causality element of a *prima facie* retaliation claim.[12] 42 U.S.C. § 2000e-3; *see Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007), *cert. denied*, 552 U.S. 1102 (2008). DynCorp cannot have acted on facts that it was unaware of.

Because the undisputed evidence negates the required causality between Clarke's protected EEOC activity and DynCorp's termination of his employment, DynCorp's motion for summary judgment is granted as to Clarke's retaliation claim (Count II).

**II. Clarke's Motion for Partial Summary Judgment.**

Clarke filed a motion for partial summary judgment on July 25, 2014. (ECF No. 55). He apparently requests summary judgment on his retaliatory hostile work environment claim (Count III). (ECF No. 55, pg. 9). In the attached affidavit, Clarke notes that "This Honorable Court

---

[11] In a previous order granting in part DynCorp's motion to dismiss, the court permitted part of Clarke's retaliation claim (Count II) to proceed into discovery, noting that "additional discovery may allow Clarke to prove facts showing that his discharge was in retaliation for" his EEOC charges filed in June and July 2010. (ECF No. 18).
[12] Because the court previously ruled that Clarke's 2006 EEOC activity was too remote from the August 2010 discharge to satisfy the causality element of his *prima facie* case, Clarke must show a causal connection between protected activity in 2010 and his discharge. In his opposition brief, however, Clarke does not cite any evidence in the record to contest DynCorp's factual assertions that it was unaware of Clarke's 2010 EEOC activity prior to discharging him.

wrote an Opinion on August 20, 2013, granting Count III of Plaintiffs Amended Complaint." (ECF No. 55-2, pg. 2).

Unfortunately, Clarke is mistaken as to the court's August 20, 2013 order. The court granted DynCorp's motion *to dismiss* Count III of Clarke's amended complaint. (ECF No. 18, pg. 14). Clarke's retaliatory hostile work environment claim, therefore, is no longer part of this lawsuit and accordingly his motion for partial summary judgment on it is denied.

Clarke also mentions several statutes and rules that govern employer-employee relationships. None of them, however, relate to the remaining claims in Clarke's amended complaint: disparate treatment and retaliation. A plaintiff can only be granted relief on the allegations contained in his complaint, so as to provide "fair notice to defendants of the allegations against them." *Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 420 (4th Cir. 2014) (internal quotation marks omitted). Aside from those referenced statutes, the only legal argument related to Clarke's amended complaint is the retaliatory hostile work environment claim which, as discussed above, was previously dismissed.

Accordingly, Clarke's motion for partial summary judgment is denied.

## CONCLUSION

For the reasons stated above, DynCorp's motion for summary judgment is granted with respect to the remaining claims in Clarke's amended complaint, Counts I and II. Clarke's motion for partial summary judgment is denied. A separate order granting same and closing this case follows.

|  |  |
|---|---|
| __08/28/2014__ | /s/ |
| Date | J. Frederick Motz |
|  | United States District Judge |